[No. 63420-3.   En Banc.]
Argued February 1, 1996.     Decided July 18, 1996.

THE STATE OF WASHINGTON, *Respondent*, v.
CHRISTOPHER C. MOEN, *Appellant*.

*Nielsen & Acosta*, by *Lindsay Brown*; and *Colleen E. O'Connor*, of *Society of Counsel Representing Accused Persons*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Calvin G. Rapada, Deputy*, for respondent.

MADSEN, J. — This case involves the question of whether the failure to object to an untimely restitution order issued under former RCW 9.94A.142(1) waives appellate review. We conclude that this timeliness challenge may be raised for the first time on appeal and reverse the order setting restitution.

## Facts

On July 29, 1992, Defendant Christopher C. Moen was charged with theft in the first degree and robbery in the first degree with a deadly weapon allegation. On January 7, 1993, a jury returned a verdict of guilty on these charges. On February 11, 1994, Moen was sentenced within the standard range. At the sentencing hearing, the State asked the court to set restitution. Both Moen and his attorney stated Moen's desire to pay restitution. The trial court concluded that restitution would be "substantial," but did not, at that time, set a restitution hearing or a restitution amount. Videotape Recorded Proceedings (VRP) at 469-70. The trial judge said to State's counsel: "I will follow my normal procedure, and that's to leave it up to you and [defense counsel]. If you can't agree, then we'll set a hearing date." VRP at 470. On February 14, 1994, a judgment and sentence was filed which included an order that restitution be paid, with an amount to be set at a future date. No date was filled in. Moen waived his presence at the restitution hearing (if required).

The State and Moen agree that there is no clerk's minute entry indicating that a restitution hearing was held. On May 13, 1994, over 60 days after the sentencing hearing, a restitution order, dated May 4, 1994, and signed by Judge Gain, was filed in which the court set restitution in the total amount of $16,566.79. In its certification, the Court of Appeals refers to this order as a "stipulated restitution order," and the State refers to it as an "agreed order." Br. of Resp't at 2, 5. The State says that the "agreed order" was signed by defense counsel. Defense counsel's signature appears below "Copy received; Notice

[of] Presentation waived." Clerk's Papers (CP) at 70. Nothing in the order indicates it is an "agreed order" or a "stipulated order." The record does not disclose any objection made by the defense to the restitution order, and Moen's brief does not claim any objection was made. Moen appealed from the judgment and sentence, challenging the restitution order as untimely. This court accepted certification of the matter from Division One of the Court of Appeals.

## Discussion

Former RCW 9.94A.142(1) provided in relevant part: "When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within sixty days." In 1994, this court issued a unanimous opinion holding that the sixty-day time limit was mandatory, not directory. *State v. Krall*, 125 Wn.2d 146, 881 P.2d 1040 (1994). In *Krall*, the judgment and sentence did not set restitution, but provided that if the State sought restitution, it "shall be by motion and hearing.'" *Id.* at 148. The State did not seek a restitution hearing until over 60 days after sentencing. Defendant raised the timeliness issue at the hearing, appealed, and then sought review of an adverse Court of Appeals decision. This court reversed the restitution order because of the failure to comply with the 60-day time limit. Moen argues that *Krall* and former RCW 9.94A.142(1) mandate reversal of the restitution order entered in his case. The State acknowledges *Krall*, but argues that the court's decision in *Krall* should be applied prospectively only.

■ The rule established by this court is that where a statute has been construed by the highest court of the state, the court's construction is deemed to be what the statute has meant since its enactment. In other words, there is no question of retroactivity. *In re Vandervlugt*, 120 Wn.2d 427, 436, 842 P.2d 950 (1992); *In re Moore*, 116 Wn.2d 30, 37, 803 P.2d 300 (1991); *State v. Darden*, 99

Wn.2d 675, 663 P.2d 1352 (1983). None of the cases upon which the State relies for support justify a different result in this case. Rather than addressing the question of "retroactive" application of a decision initially construing the meaning of a statute, the cases cited by the State involve principles of retroactivity-prospectivity of new rules. In *Cascade Security Bank v. Butler*, 88 Wn.2d 777, 567 P.2d 631 (1977), for example, the court was asked to decide whether its decision, which overruled a prior decision of the court, was to be given retroactive application. Likewise, the issue presented in *In re Marriage of Ortiz*, 108 Wn.2d 643, 740 P.2d 843 (1987), was whether the court's prior decision in *In re Marriage of Edwards*, 99 Wn.2d 913, 665 P.2d 883 (1983), approving escalation clauses in child support awards, would apply retroactively. While *Edwards* did discuss whether use of such clauses was consistent with the language of former RCW 26.09.100, the court's approval of the clauses did not require the court to declare the meaning of that statute. Thus, the court's decision in *Ortiz* regarding retroactivity of its decision in *Edwards* did not involve the retroactivity of the court's construction of any statute.

Unlike the circumstances in the cases cited by the State, in *Krall* this court declared the meaning of RCW 9.94A.142(1). Accordingly, RCW 9.94A.142(1) cannot be given only prospective effect as the version of the statute which applies in this case has always mandated that restitution be set within 60 days of sentencing.[1]

Next, the State argues that Defendant Moen waived

---

[1]In arguing for "prospectivity" of *Krall*, the State says that the purpose of the restitution statute is compensation to the victim for losses and injuries caused by crime, and this purpose would be defeated by applying *Krall* "retroactively." The State refers to the declaration of intent of RCW 7.69, Crime Victims, Survivors, and Witnesses, RCW 7.69.010, and to the 1985 FINAL LEGISLATIVE REPORT at 84, which states victims have a right to restitution in all felony cases except under extraordinary circumstances. There is little doubt that compensating victims is a purpose of restitution; however, this court and the Court of Appeals have both said it is not the primary purpose. *See, e.g., State v. Barr*, 99 Wn.2d 75, 79, 658 P.2d 1247 (1983) (partial compensation of victims may be concomitant result of restitution, but primary purpose is rehabilitation and prevention of recidivism; civil action available for civil damage); *State v.*

any timeliness error by signing an "agreed order" to pay restitution; thus, appellate review is precluded because of his failure to object to the "agreed order." It is unclear what the State means when it refers to the order as "agreed." The record does not reflect any actual agreement between the State and the defense. While the defendant expressed a desire to pay restitution, it was not part of any plea agreement. The defendant was convicted following a jury trial. Further, RCW 9.94A.142(2) requires that the judge order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property . . . ." Thus, the court was required to order restitution, and Moen's stated willingness to pay restitution did not make any difference.

Nor does the restitution order recite any agreement or stipulation. The order states that "[t]he court ordered payment of restitution as a condition of sentencing" and that "[t]he Court has determined that the following persons are entitled to restitution" and then lists the victims and amounts of restitution. CP at 69. Moen had waived his presence at any restitution hearing, and the record does not reveal that any hearing was held. Defense counsel signed the order, but only as to copy received and notice of presentation waived.[2] While comments by the trial judge at sentencing indicate his intent that the parties try to reach agreement before setting a restitution hearing, nothing shows whether that is what actually happened.

■ The order in this case is similar to defendant Ta-

---

*Martinez*, 78 Wn. App. 870, 881, 899 P.2d 1302 (1995), *review denied*, 128 Wn.2d 1017 (1996).

[2] CrR 1.1 provides that the criminal rules supersede all procedural statutes and rules which conflict with the criminal rules. Where the criminal rules are silent, the civil rules can be instructive as to matters of procedure. *State v. Hackett*, 122 Wn.2d 165, 170, 857 P.2d 1026 (1993); *State v. Gonzales*, 110 Wn.2d 738, 744, 757 P.2d 925 (1988). Under these principles, CR 54(f) seems to provide the relevant provisions concerning presentation of the restitution order. CR 54(f)(2) states that "[n]o order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment unless . . . [o]pposing counsel has approved in writing the entry of the proposed order or judgment or waived notice of presentation."

ton's order in *State v. Ryan*, 78 Wn. App 758, 762, 899 P.2d 825, *review denied*, 128 Wn.2d 1006 (1995). At sentencing, the court ordered Taton to pay restitution in an amount to be determined by separate order. Six weeks after the sentencing the State filed an ex parte order fixing restitution. Two weeks after the order was signed the defendant filed his objection to the amount. Initially, the Court of Appeals observed that restitution may be "determined" for purposes of RCW 9.94A.142(1) either through an admission or acknowledgment of the defendant or by a preponderance of evidence in an evidentiary proceeding. *Ryan*, 78 Wn. App. at 761. As the Court of Appeals noted, Taton had not agreed to the amount of restitution, which was determined ex parte, nor did the order establish a deadline by which the defendant was required to object. *Id.* at 762. "[A]n ex parte restitution order is final and enforceable only if the defendant does not object . . . ." *Id.* at 762. Because the order was open-ended and the defendant could object even a year after entry, the ex parte order did not constitute an agreement or acknowledgment of the restitution amount sufficient to determine the amount of restitution within the meaning of RCW 9.94A.142(1). *Id.* at 762.

In this case, as in *Ryan*, the amount of restitution was unknown at the time of sentencing and needed to be "determined" as required by RCW 9.94A.142(1). Restitution was finally determined three months after the sentencing hearing through an ex parte order prepared by the State. Like the *Ryan* court, we are not convinced on this record that the order is an "agreed" or "stipulated" order in the sense that the parties reached an agreement as to the restitution amount after consultation and negotiation. We conclude, instead, that the most that should be said about the order is that entry of the order was not contested.[3]

■ ■ Most importantly, the order in this case was

---

[3]By definition, an ex parte order is done on the application of one party, in this case, the State. Although the defendant signed the order "copy received, no-

entered some three months after the sentencing hearing. In *Krall,* the order was invalid because it was too late when entered. We will not construe an uncontested order entered after the mandatory 60-day period of former RCW 9.9A.142(1) had passed as a waiver of that timeliness requirement; it was invalid when entered.

We are aware that one effect of holding that restitution is barred when the order is entered too late is that the victim of the offense does not receive compensation under the restitution statutes. That result necessarily follows in each case where the State's delay precludes compliance with the mandatory time limit and defendant has not waived a timely determination of the amount of restitution, as in this case. Our unanimous holding in *Krall* recognizes that the statutory time mandate prevails over victims' rights to restitution. In *Krall* we examined the statutory scheme and the legislative history of the restitution statute, and concluded that when the Legislature said restitution shall be determined within sixty days of sentencing, that is what it meant. *Krall,* at 148–49. Despite the dissent's urging that we interpret the former RCW 9.94A.142 in light of the facts of this case, our decision in *Krall* is to the contrary.

The principle that time limits exist which may bar compensation to injured persons is not a novel concept in our jurisprudence. At some point, rights will be cut off. It is inappropriate to hold a defendant accountable by imposing restitution in violation of former RCW 9.94A.142 in order to "enforce" victims' rights, as the State urges us to do, when the State failed in its burden to comply with the statutory 60-day time requirement. Although the dissent accepts the State's argument and makes an impassioned plea for the victim, Washington courts have recognized that the criminal justice system is not a substitute for a civil judgment against a criminal defendant. For example, in *State v. Martinez,* 78 Wn. App. 870, 881, 899 P.2d 1302

---

tice of presentation waived" it contained no language of stipulation or agreement as to the amount of restitution.

(1995), *review denied*, 128 Wn.2d 1017 (1996), a decision postdating the statutes and the constitutional amendment relied upon by the dissent, the court plainly and accurately said that "compensation is not the primary purpose of restitution, and the criminal process should not be used as a means to enforce civil claims." *See also State v. Barr*, 99 Wn.2d 75, 79, 658 P.2d 1247 (1983).

It is also in the victim's best interest to have restitution set in a timely fashion under RCW 9.94A.142, when evidence of loss is fresh and the victim's need often at its greatest. Under former RCW 9.94A.142 it was accordingly imperative that the State obtain a timely restitution order both to serve the victim's interest and to comply with the Legislature's mandate that the amount of restitution be determined within 60 days of sentencing.

Finally, the State argues that Moen's failure to object precludes appellate review.[4] As the State correctly points out, the general rule is that issues may not be raised for the first time on appeal. However, there are exceptions to the rule. For example, RAP 2.5(a) provides that a party may raise certain errors for the first time on appeal including lack of trial court jurisdiction and manifest error affecting a constitutional right. RAP 2.5(a). Moen does not claim a constitutional right is involved, and there appears to be none. He does claim, however, that the trial judge lacked jurisdiction to impose restitution beyond the 60-day limit authorized by RCW 9.94A.142(1).

The authority to impose restitution is statutory. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). Whether a criminal penalty imposed without statutory authority, such as restitution, implicates the court's jurisdiction is an issue which has been discussed but not decided by this court. In some cases, a sentence imposed in excess of statutory authority has been referred to as a jurisdictional matter. In *State v. Loux*, 69 Wn.2d 855, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967), for

---

[4]The defendant in *Krall* did object to the untimely restitution hearing.

example, the court considered a concurrent sentence which conflicted with a statutory provision requiring consecutive sentencing under the circumstances presented. The court said that "[t]he portion of the judgment and sentence which was in excess of the court's jurisdiction cannot be regarded" but must be struck down. *Id.* at 858. *See also, e.g., State v. Wiley,* 63 Wn. App. 480, 482, 820 P.2d 513 (1991) (where alleged error is that trial court exceeded statutory authority by imposing a sentence contrary to law, error may be raised for the first time on appeal because the trial court exceeds its jurisdiction when it imposes a sentence contrary to law).

In contrast, in *In re Carle,* 93 Wn.2d 31, 604 P.2d 1293 (1980), the petitioner had not appealed nor otherwise challenged application of an enhanced penalty provision in his sentencing. The court nevertheless considered the claimed sentencing error when first raised in a personal restraint petition, stating that "the court has both the power and the duty" to correct the sentencing error, and remanded for the trial court to correct its error. *Id.* at 33–34. *Carle* does not refer to a jurisdictional basis for its consideration of the issue. *See also In re Williams,* 111 Wn.2d 353, 759 P.2d 436 (1988) (sentence error may be raised for the first time in a personal restraint petition).

Recently, the Court of Appeals addressed the question of whether an objection was necessary to preserve error for appellate review where the alleged error involved imposition of a sentence without statutory authority. In *State v. Paine,* 69 Wn. App. 873, 850 P.2d 1369, *review denied,* 122 Wn.2d 1024 (1993), the court reviewed several Court of Appeals' decisions which it observed did not appear to be in complete agreement on the question. After summarizing these opinions, the court said that it found no cases explaining the distinction between imposition of a sentence contrary to law and other types of cases where a trial court acts without authority or contrary to law, and no explanation of why the former involve a jurisdiction question and the latter do not. *Id.* at 884. It appeared to the court that

the cases addressing the review of sentencing errors on appeal have established a common law rule that when a sentencing court acts without statutory authority in imposing a sentence, that error can be addressed for the first time on appeal.

A justification for the rule is that it tends to bring sentences in conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection to the trial court.

*Paine*, 69 Wn. App. at 884. The Court of Appeals has followed *Paine* in several cases.

■ The distinction between a decision which exceeds jurisdiction and one which exceeds statutory authority was recently discussed by this court in the context of a worker's compensation award. *Marley v. Department of Labor & Indus.*, 125 Wn.2d 533, 886 P.2d 189 (1994). In *Marley*, the court rejected the argument that an order outside the relevant statutory mandate is void, reasoning that such an analysis transforms mistakes as to statutory construction, i.e., errors of law, into jurisdictional issues. *Id.* at 541. The court said that a court has subject matter jurisdiction where the court has the authority to adjudicate the *type of controversy* in the action, and that it does not lose subject matter jurisdiction merely by interpreting the law erroneously. *Id.* at 539 (citing and quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982)).

■■ We believe that the analysis outlined in *Marley* applies with equal force in this case. Here, the trial court had authority to adjudicate the type of controversy, i.e., to impose restitution, but did so in violation of the sixty-day time limit. Under these circumstances, we conclude that untimely imposition of restitution as a condition of a sentence is not a jurisdictional defect. To the extent that prior decisions are inconsistent they are overruled.

Because the error here is neither jurisdictional nor constitutional, and is therefore not directly addressed by

RAP 2.5, we must decide whether an exception to the objection requirement should be made where the alleged error involves a sentencing order which exceeds the trial court's statutory authority. The State argues that the court should apply the general rule that an objection is required to preserve error for appellate review and cites a number of cases to support that proposition. Most of the authority upon which the State relies, however, does not involve sentencing issues, or restitution specifically. One cited case, however, does involves sentencing. *State v. Garibay*, 67 Wn. App. 773, 841 P.2d 49 (1992). The State contends that *Garibay* holds that a failure to object to a sentencing date within the forty days required by RCW 9.94A.110 bars appellate review. However, while the court in *Garibay* observed that the defendant had not objected to the delay or asserted he was prejudiced by it, it also reasoned that under the statute the extension of time for sentencing was discretionary with the court and the discretion was properly exercised. *Id.* at 776 n.1, 777. Neither *Krall,* nor the restitution statute, former RCW 9.94A.142, permits such discretion. Another case cited by the State concerns a challenge based on CrR 3.3's speedy trial rule, which this court declined to review for lack of an objection in superior court. *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985). However, CrR 3.3(e) (then and now) includes an express provision that failure to object constitutes a waiver of the time period. There is no comparable provision applicable here.

■ We find the reasoning in *Paine* and similar cases more persuasive than the cases cited by the State. *See Paine; see also, e.g., Wiley; but see, e.g., State v. Stephan*, 35 Wn. App. 889, 895-96, 671 P.2d 780 (1983) (Division Three) (claim that restitution ordered contrary to statute considered to be within general rule that failure to raise an issue before the trial court precludes appellate review). Permitting defendants to raise the issue of timeliness of restitution orders in circumstances like those in this case ensures that sentences are in compliance with the exist-

ing sentencing statutes, notably former RCW 9.94A.142(1). This principle, recognized by the court in *Paine,* applies to appeals.[5]

Further, the purpose of requiring an objection in general is to apprise the trial court of the claimed error at a time when the court has an opportunity to correct the error. *E.g., State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979). An objection on the basis that a restitution order has been entered after the sixty-day time limit has passed arises under circumstances where the trial court would be unable to set restitution in a timely fashion. At most, if the challenge is valid, the trial court could refuse to set restitution. This sort of "correction"of an error does not fall sufficiently within the purpose of the rule to justify requiring an objection as a prerequisite to appellate review.

The court has noted, with regard to the objection requirement, that under most circumstances it is unwilling to let a defendant go to trial, speculate on the outcome, and then claim error raised for the first time on appeal. *Id.* at 642–43. Where a restitution order is involved, the defendant's failure to object to a late order does not entail the same potential for abuse as that described in *Wicke;* the defendant is not withholding an objection in order to take a chance on a favorable verdict. All that is involved is a court ruling the restitution order invalid because the timeliness requirement has not been met. Whether the trial court or the appellate court makes that determination is a distinction with little difference, once the time period has passed.

Considering the purpose underlying the objection requirement, and our reasoning in *Paine,* we conclude that a timeliness challenge to an order entered pursuant

[5]It is important to note that the rule or rules for determining whether the court hears matters raised for the first time on appeal differ significantly from those which apply where an issue is raised for the first time in a personal restraint petition. This court is determining whether an untimely restitution order can be challenged by means of a personal restraint petition in *In re Fleming,* 129 Wn.2d 529 (1996).

to former RCW 9.94A.142(1) may be raised for the first time on appeal.

■ Finally, the State argues that Moen must establish prejudice resulting from the untimely restitution order, citing cases where late sentencing dates which did not prejudice the defendant were upheld. *E.g.*, *State v. Eugene W.*, 41 Wn. App. 758, 706 P.2d 235, *review denied*, 104 Wn.2d 1025 (1985); *State v. Carlson*, 65 Wn. App. 153, 164–65, 828 P.2d 30, *review denied*, 119 Wn.2d 1022 (1992). The State does not cite any authority for the proposition that prejudice must be shown to have resulted from failure to comply with former RCW 9.94A.142(1)'s 60-day time limit. *Krall* is to the contrary. The restitution order there was reversed solely because the mandatory time limit was not followed, and no discussion of prejudice appears in the opinion. *Krall* does not require that the defendant establish prejudice in order to obtain reversal of the restitution order and the State has not asked the court to modify *Krall*.

The order setting restitution is reversed.

SMITH, JOHNSON, ALEXANDER, and SANDERS, JJ., concur.

TALMADGE, J. (dissenting) — The majority concludes an order of restitution must be reversed because it was not timely under former RCW 9.94A.142 and *State v. Krall*, 125 Wn.2d 146, 881 P.2d 1040 (1994).[6] A defendant, however, may waive the 60-day time limit of that statute. *State v. Hunsicker*, 129 Wn.2d 554, 919 P.2d 79 (1996). Moreover, the victim here has a right to restitution. RCW 9.94A.142(2). Because I believe Moen clearly waived the statutory time limit of RCW 9.94A.142, and there is no reason to deprive the victim of his right to restitution, I respectfully dissent.

---

[6]RCW 9.94A.142(1) formerly provided: "When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within sixty days." In 1995, the time period was made 180 days, which may be enlarged for good cause. LAWS OF 1995, ch. 231, § 2.

It was not disputed that either Moen or his friend Brian Wilcox attacked Garrett Nakamoto with a homemade, two-and-one-half-foot-long bat Moen owned. It was undisputed they left Nakamoto lying on the street, partially unconscious, with his face crushed.

In closing arguments, Moen's counsel told the jury what happened to Nakamoto was "horrible," and "Moen will be convicted of a theft and Judge Gain will impose the appropriate sentence on Christopher Moen's [inaudible] theft, and he will see that Mr. Nakamoto's reimbursed." Report of Proceedings at 408.

The jury found Moen guilty of theft and first degree robbery with a deadly weapon. At the sentencing hearing, Moen's counsel asked him: "Chris, have you heard Mr. Nakamoto [the father of the victim] request that the restitution be paid fully and properly?" Chris Moen replied, "Yes I have. And I plan on doing that to the best of my ability." *Id.* at 456. Moen's counsel then told the court:

> I'm not in a position to speak on behalf of Mr. Nakamoto because I don't represent him. He's requesting full and prompt restitution. Mr. Moen does have the ability to work. . . . *[H]e has told me in private that he wishes to compensate Mr. Nakamoto fully. The sooner he's released, the sooner he's able to do that.* . . . We think that the process we're asking for is a rehabilitative process. Mr. Moen will be best addressed; society will be best addressed as well.

*Id.* at 461 (emphasis added).

The trial court said it was "satisfied that the restitution in this case will be substantial." The State asked the court if it wished to set a restitution hearing. The court said, "I will follow my normal procedure, and that's to leave it up to you and [defense counsel]. If you can't agree, then we'll set a hearing date." The State responded affirmatively and asked if the defendant waived his presence at any hearing, if one were to be set. Moen's counsel responded, "He will waive his presence." *Id.* at 469–70. On February

14, 1994, a judgment and sentence was entered sentencing Moen to 60 months' imprisonment for the robbery charge, two months' imprisonment for theft, and ordering restitution, without any amount indicated.

On May 4, 1994, the court signed an order setting restitution in the total amount of $16,566.79. The restitution order stated "[a]dditional restitution will be ordered if further expenses related to the crime are processed." Moen's counsel signed the order under the notation, "Copy received; Notice [of] Presentation waived." Clerk's Papers at 69–70. This order was entered May 13, 1994, over 60 days after the sentencing hearing. Moen did not object to the order, but instead appealed.

The majority does not cite, and declines to follow, *Hunsicker*, 129 Wn.2d 554 (1996), where we held the 60-day time limit of former RCW 9.94A.142 can be waived by a defendant. In *Hunsicker*, the defendant waived the statutory time limit under the terms of a plea agreement. Here, Moen waived the time limit by his trial conduct and his assent to an agreed restitution order. Moreover, the majority ignores the victim's right to restitution.

## A. An Agreed Restitution Order Waives the 60-Day Time Limit

The majority essentially ignores Moen's trial conduct and asserts the restitution order at issue was not an agreed order because "[t]he record does not reflect any actual agreement between the State and the defense." Majority op. at 540. Instead, the majority finds the order was neither "agreed" nor "stipulated," and asserts "the most that should be said about the order is that entry of the order was not contested." Majority op. at 541. This is not correct.

Civil Rule 2A provides an agreement between parties or attorneys will be enforced by the court if "made and assented to in open court on the record." (Civil rules may apply in criminal proceedings. Majority op. at 540 n.2.) Here Moen agreed in open court, on the record, to pay

restitution, to work out the amount with the State, and to set a hearing on the issue if agreement could not be reached. It is unfair to the victim Nakamoto to allow Moen to profess his willingness to pay restitution, to gain jury sympathy, and to allow him to work out the amount out of court, but then to relieve him of liability for restitution because he failed to have the restitution order entered in a timely fashion.

Further, the majority's characterization of the restitution order as not being agreed despite Moen's counsel's signature is deeply troubling. Majority op. at 539–42. The majority's characterization of the order ignores the context in which the order arose and normal practice in the courts of our state. The trial court here directed the lawyers to come to an agreement on the amount of restitution. In fact, the lawyers did come to an agreement, which is reflected in the order entered by the trial court.

In practice, when a lawyer signs an order prepared by his or her opponent with a notation such as "copy received, notice of presentation waived," that lawyer may ordinarily be agreeing only to the entry of the order in the format prepared by the opposing counsel. In effect, counsel acknowledges the other side won the day before the court and the order embodies the trial court's ruling.

However, that was not the case here. Initially, there was no decision by the trial court on the amount of restitution. The trial court requested the parties to come to an agreement as to the amount of restitution. They agreed. They then *agreed to an amount* of restitution which is reflected in the order signed by Moen's counsel. In these circumstances, where Moen's counsel signed the order "copy received, notice of presentation waived," an agreed order was present. Moen's counsel not only agreed to the format of the order, but agreed to the content of it, reflecting the agreement he reached with the deputy prosecutor on the amount of restitution. Moen may not now challenge it on appeal.

Even if Moen's counsel had not signed the proposed or-

der, a mere failure to object to entry of the order also would have sufficed to indicate consent and make the restitution order enforceable. The majority cites with approval *State v. Ryan*, 78 Wn. App. 758, 899 P.2d 825, *review denied*, 128 Wn.2d 1006 (1995), where the Court of Appeals stated even an ex parte restitution order is final and enforceable if the defendant does not object to it. *Ryan*, 78 Wn. App. at 762; Majority op. at 540–41. It is undisputed Moen did not object to the restitution order here. Majority op. at 537-38. Accordingly, Moen's right to object under *Krall* was lost by his failure to exercise it.[7]

## B. The Victim's Right to Restitution

The most troublesome aspect of the majority opinion is its failure to heed the statutory and constitutional rights of Mr. Nakamoto, the victim of Moen's cruel assault. Victims of crime and their survivors have standing in the criminal justice and sentencing process, and, in the absence of "extraordinary circumstances," have a right to restitution. Former RCW 9.94A.142(2) provides restitution "shall" be ordered whenever the defendant is convicted of offenses involving personal injury or property loss "unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment." RCW 7.69.030 requires the state to make "reasonable efforts" to ensure rights to crime victims, survivors and witnesses, including the right "to entry of an order of restitution by the court in all felony cases, even when the offender is sentenced to confinement, unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment." RCW 7.69.030(15). *See also* 1985 FINAL LEGISLATIVE REPORT at 84 (victims have right to restitution absent extraordinary circumstances).

The Legislature recognized victims' and survivors' rights in RCW 7.69.010:

---

[7]The majority states: "[d]espite the dissent's urging that we interpret the former RCW 9.94A.142 in light of the facts of this case, our decision in *Krall* is to the contrary." Majority op. at 542. This is not correct. *Krall* did not involve a defendant who waived the 60-day time limit or who promised restitution to appeal for jury sympathy. Therefore, *Krall* does not control this case.

In recognition of the severe and detrimental impact of crime on victims, survivors of victims, and witnesses of crime and the civic and moral duty of victims, survivors of victims, and witnesses of crimes to fully and voluntarily cooperate with law enforcement and prosecutorial agencies, and in further recognition of the continuing importance of such citizen cooperation to state and local law enforcement efforts and the general effectiveness and well-being of the criminal justice system of this state, the legislature declares its intent, in this chapter, to grant to the victims of crime and the survivors of such victims a significant role in the criminal justice system. The *legislature further intends to ensure that all victims and witnesses of crime are treated with dignity, respect, courtesy, and sensitivity; and that the rights extended in this chapter to victims, survivors of victims, and witnesses of crime are honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants.*

(Emphasis added.) Victims' rights were incorporated into our Constitution through adoption in 1989 of a victims' rights provision. WASH. CONST., art. I, § 35 (amend. 84) grants "basic and fundamental rights" to victims and survivors; and seeks to "ensure victims a meaningful role in the criminal justice system and accord them due dignity and respect." In *State v. Gentry*, 125 Wn.2d 570, 628–29, 888 P.2d 1105, *cert. denied*, 116 S. Ct. 131, 133 L. Ed. 2d 79 (1995), we recognized this amendment speaks powerfully to the fundamental principle of restoring what is taken from a victim of crime.

In construing RCW 9.94A.142, particularly in the present case where Moen agreed to pay restitution, we must give voice to the rights of crime victims.[8] Moen agreed to pay restitution in open court to enlist jury sympathy at trial. Moen agreed in open court at sentencing to settle the amount of restitution through negotiation with the

---

[8]The majority errs in stating *Krall* holds the 60-day time limit of former RCW 9.94A.142 to prevail over victims' statutory right to restitution. A decision is precedential only as to the arguments it considers, and *Krall* does not consider or even mention the statutes concerning victims' right to restitution.

State. He did not object to the restitution order. His lawyer signed an agreed order of restitution. No extraordinary circumstances are present, as required under the statute, to justify depriving Garrett Nakamoto, his family and insurers, of their right to restitution of some $16,566, as part of the costs of the severe injuries he suffered. Given the unambiguous statutory and constitutional policies affording simple justice to crime victims like Mr. Nakamoto, we are compelled to conclude Moen waived any statutory time limits for entry of the order of restitution. We should not permit Moen to victimize his victim yet again.[9]

DURHAM, C.J., and DOLLIVER and GUY, JJ., concur with TALMADGE, J.

[No. 63861-6.  En Banc.]
Argued February 1, 1996.     Decided July 18, 1996.

---

[9]The suggestion by the majority that a strict view of the 60-day time limit serves the "victim's best interest" is odd. Majority op. at 543. The victim is not served by cutting off the right to restitution or by refusing to recognize a defendant's waiver of the time limit. Consideration of the victim's interest would suggest the 60-day limit should not be a means by which a defendant may escape the obligation to make restitution.