**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 82595-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| DONNICA DENISE BOOKER, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Donnica Denise Booker appeals the trial court's order that she comply with biological sampling for DNA[1] identification after she pleaded guilty to one count of felony assault. Booker argues that because she has prior felony convictions, the Washington State Patrol Crime Laboratory (WSPCL) already has her DNA, so the court should have ordered that she does not have to submit a duplicate sample. We conclude that RCW 43.43.754 directs law enforcement agencies to collect an individual's DNA on conviction of a qualifying offense and vests the agencies, not the court, with discretion whether to collect duplicate biological samples. We affirm.

FACTS

Booker shot Saryi Thomas on June 7, 2018. The State charged Booker with first and second degree assault with firearm sentencing enhancements. On

---

[1] Deoxyribonucleic acid.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 82595-0-I/2

January 25, 2021, Booker pleaded guilty to one count of first degree assault with no firearm enhancement.

On April 2, 2021, the court sentenced Booker to 102 months' confinement.[2] The court also ordered Booker to "have a biological sample collected for purposes of DNA identification analysis and . . . fully cooperate in the testing, as ordered in **APPENDIX G**." Under Appendix G, Booker must "cooperate with [law enforcement] in providing a biological sample."[3] Because Booker had two previous felony convictions, the court waived payment of the $100 DNA collection fee.

Booker appeals.

## ANALYSIS

Booker argues that the court erred when it ordered her to "have a biological sample collected" for DNA analysis because her "felony history assures that her DNA sample is already in the database." The State argues Booker's claim is moot. In the alternative, the State contends that RCW 43.43.754[4] gives the court discretion to order collection of duplicate biological samples.

---

[2] Booker's standard range sentence was 129 to 171 months of confinement. But both parties recommended the trial court impose an exceptional sentence downward.

[3] Appendix G also directs a defendant that if they are out of custody, they must "promptly contact the King County Sheriff's Office to make arrangements for the test to be conducted within 15 days."

[4] We consider the 2020 statute, which was in effect in 2021 when the court convicted Booker. State v. Bennett, 154 Wn. App. 202, 208-09, 224 P.3d 849 (2010) (citing State v. Brewster, 152 Wn. App. 856, 859-61, 218 P.3d 249 (2009)). The 2020 version of RCW 43.43.754 is in effect until July 1, 2022. LAWS OF 2021, ch. 215, § 149.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82595-0-I/3

Mootness

The State argues Booker's appeal is moot. According to the State, the Department of Corrections (DOC) collected Booker's DNA shortly after sentencing, so this court can no longer provide her effective relief.[5] Booker acknowledges that her appeal is "technically moot" but asks us to review her claim as a matter of public interest.

An issue is moot if we can no longer provide effective relief for the claimed legal error. In re Det. of Cross, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983). We generally dismiss an appeal that raises only moot issues. Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). But we may review moot issues of continuing and substantial public interest. In re Pers. Restraint of Mattson, 166 Wn.2d 730, 736, 214 P.3d 141 (2009).

When considering whether a case presents issues of continuing and substantial public interest, we look to (1) " 'the public or private nature of the question presented,' " (2) " 'the desirability of an authoritative determination for the future guidance of public officers,' " and (3) " 'the likelihood of future recurrence of the question.' " State v. Huckins, 5 Wn. App. 2d 457, 463, 426 P.3d 797 (2018)[6] (quoting State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). We also evaluate the level of genuine adverseness and the quality of

---

[5] The State also argues that we should decline to review Booker's claim under RAP 2.5(a) because she did not raise it below. But we can consider sentencing errors addressed for the first time on appeal, even if the error is not jurisdictional or constitutional. State v. Moen, 129 Wn.2d 535, 545-47, 919 P.2d 69 (1996). A defendant can challenge an illegal or erroneous sentence for the first time on appeal. State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

[6] Internal quotation marks omitted.

No. 82595-0-I/4

advocacy of the issues, as well as the likelihood that the issue will escape review because the facts of the controversy are short lived. Id.

Applying these factors, we exercise our discretion to address Booker's claim because it raises an issue likely to reoccur, and to give helpful guidance to public officers.

<u>DNA Collection Statute</u>

Booker argues the sentencing court should have ordered that she need not provide a biological sample because WSPCL already has her DNA. We disagree.

We review issues of statutory interpretation de novo. <u>State v. Velasquez</u>, 176 Wn.2d 333, 336, 292 P.3d 92 (2013). When interpreting a statute, we first look to its plain language and meaning to determine legislative intent. <u>Id.</u> We discern a statute's plain meaning from the text of the provision, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. <u>State v. Evans</u>, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). As much as a statute is ambiguous, we may look to legislative history for assistance in discerning legislative intent. <u>Id.</u> at 192-93.

Under RCW 43.43.754(1)(a), "[a] biological sample must be collected for purposes of DNA identification analysis from . . . [e]very adult or juvenile individual convicted of a felony" or other qualifying offense.[7] The statute directs law enforcement agencies to collect DNA samples from individuals convicted of

---

[7] The term "qualifying offense" refers to all adult and juvenile felony and misdemeanor convictions listed in RCW 43.43.754(1)(a)(i) through (xi). The statute also requires collection of DNA for all individuals required to register as sex or kidnapping offenders under RCW 9A.44.130. RCW 43.43.754(1)(b).

4

No. 82595-0-I/5

qualifying offenses and submit the samples to WSPCL.  RCW 43.43.754(5), (7).

WSPCL then tests the samples and adds them to a DNA database.  RCW

43.43.754(7), .753.

The law enforcement agency responsible for collecting a biological sample

depends on the individual's custody status.  RCW 43.43.754(5).  If an individual

is in custody or sentenced to serve a term of confinement in a city or county jail,

the city or county detention facility must collect the biological sample.  RCW

43.43.754(5)(a).  If an individual is serving or will serve a term of confinement in

DOC, then the DOC facility holding the person must collect the DNA "as part of

the intake process" or "as soon as is practicable."  RCW 43.43.754(5)(c).  And if

an individual is out of custody at sentencing and will not serve a custodial

sentence, the "local police department or sheriff's office shall be responsible for

obtaining the biological samples."  RCW 43.43.754(5)(b).

Looking at the statute as a whole, it serves as a directive to law

enforcement agencies, not the court.  The legislature determined the

circumstances under which law enforcement agencies must collect a biological

sample, and the statute contemplates action from the court only when sentencing

an out-of-custody individual to no term of confinement.[8]  See RCW

43.43.754(5)(d).  Even then, the statute directs the court only to "[o]rder the

person to report to the local police department or sheriff's office" to provide the

---

[8] To the extent that State v. Lewis, 194 Wn. App. 709, 720-21, 379 P.3d 129 (2016), determines otherwise, we abrogate that conclusion.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

required biological sample[9] and "inform the person that refusal to provide a biological sample is a gross misdemeanor."  RCW 43.43.754(5)(d).

Booker argues that much like RCW 43.43.7541 vests the court with the discretion to waive her obligation to pay a duplicate DNA collection fee, RCW 43.43.754(4) vests the court with the discretion to waive her obligation to provide a duplicate biological sample.[10]  But her comparison is inapt.

Under RCW 43.43.7541, "[e]very sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction."  The plain language of that statute empowers the court to waive the DNA collection fee if an individual has already provided a biological sample.

But unlike the DNA fee statute, RCW 43.43.754(4) speaks to the discretion of law enforcement agencies, not the court.  Under RCW 43.43.754(4), if WSPCL "already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted."  Read in context, the provision instructs law enforcement agencies that they need not collect or submit a duplicate sample if WSPCL already has one.  But it does not prohibit the agency from doing so.

---

[9] Under RCW 43.43.754(5)(d), if the local law enforcement agency has established a protocol for DNA collection in the courtroom, then the court must instead "order the person to immediately provide the biological sample to the local police department or sheriff's office before leaving the presence of the court."

[10] Booker does not argue any constitutional provision prohibits collecting duplicate DNA samples.

6

Legislative history supports this interpretation. In 2008, the legislature amended RCW 43.43.754 to add the language in what is now subsection (4). LAWS OF 2008, ch. 97, § 2. The house bill report shows that the legislature intended the provision to expand the DNA database and ease the burden on WSPCL and local governments of testing duplicate samples from the same individuals. H.B. REP. ON H.B. 1023, at 4, 60th Leg., Reg. Sess. (Wash. 2007). The provision does so by instructing law enforcement that it need not collect duplicate samples of DNA. S.B. REP. ON ENGROSSED SUBSTITUTE S.B. 6488, at 2, 60th Leg., Reg. Sess. (Wash. 2008) ("If a DNA sample already exists from the offender in question, another biological sample does not have to be collected."). Likewise, once law enforcement submits a sample to WSPCL, the lab may exclude "[d]uplicate biological samples . . . from testing." H.B. REP. ON H.B. 2713, at 3, 60th Leg., Reg. Sess. (Wash. 2008). While RCW 43.43.754(4) aims to relieve the government's burden to collect and test duplicate biological samples, nothing in the language or legislative history of the provision prohibits law enforcement agencies from collecting duplicate DNA samples or relieves an individual from providing a biological sample on a lawful request.[11]

---

[11] Because RCW 43.43.754(4) does not vest the court with the discretion to waive a duplicate DNA sample, we decline to address Booker's argument that a defendant's prior felony convictions should lead to a rebuttable presumption that WSPCL already has that defendant's DNA and a duplicate sample is not warranted.

No. 82595-0-I/8

We conclude that RCW 43.43.754 directs law enforcement agencies to collect DNA on conviction of a qualifying offense and vests the agencies, not the court, with the discretion whether to collect duplicate biological samples. We affirm.

Bowman, J

WE CONCUR:

Mann, J.                              Appelwick, J.P.T.